Note.—See under (1) 32 C. J. p. 1147, §257; p. 1148. §259; 14 R. C. L. p. 925; 3 R. C. L, Supp. p. 315: 4 R. C. L. Supp. 930; 5 R. C. L. Supp. 787. (2) 13 C. J. p. 524, §485: p. 525. §486; p. 542. §514: pp. 785, 787, §997; 6 R. C. L. p. 862; 2 R. C. L. Supp. p. 234; 4 R. C. L. Supp. p. 448; 5 R. C. L. Supp. p. 374. (3) 4 C. J. p. 1129, §3122.

---

**BEARDEN et al. v. AMERICAN NAT. BANK OF OKLAHOMA CITY et al.**

No. 17292—Opinion Filed Nov. 9, 1926.

**1. Appeal and Error — Review—Sufficiency of Evidence in Equity Cases.**

In equity causes, if there is competent evidence to support the judgment of the court the cause will not be reversed, unless the judgment of the trial court is clearly against the weight of the evidence.

**2. Lis Pendens—Plaintiff's Title not Affected by Pendente Lite Purchase.**

Under section 260, Comp. Stat. 1921, where an action is pending. no interest can be acquired by third persons in the subject-matter of the action as against the plaintiff's title, if summons has been served or publication notice given within 60 days after the filing of the petition.

**3. Same—Settlement by Plaintiff with Defendant Grantor Without Notice of Pendente Lite Purchase.**

Where a third person has purchased from one of the defendants in a pending action an interest in the land which is the subject of the action. without actual notice to the plaintiff, the plaintiff may settle with the defendant grantor without incurring any liability to said third party, a stranger to the action.

**4. Mortgages—Foreclosure — Judgment and Sale of Part of Property Pursuant to Stipulation—Validity of Sale of Remainder under Order of Sale.**

Where all parties to an action enter into a written stipulation for judgment in a mortgage foreclosure proceeding, whereby the sale of the lands, covered by the mortgage. is provided for and the proceeds derived therefrom are to be in full settlement of the obligations of all the parties. and no deficiency judgments are to be taken, and where all parties agree that the mortgagee may sell all or any portion of the mortgaged property at private sale, held, that a sale of a portion of the property by the mortgagee and a credit of the proceeds upon the judgment. in the absence of fraud, will not invalidate a sale of the remainder to the highest bidder. under an order of sale, in satisfaction of the judgment.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Hughes County; Geo. C. Crump, Judge.

Action by the American National Bank

against J. S. Bearden et al. Judgment for plaintiff, and certain defendants bring error, making the Tidal Osage Oil Company also a defendant in error. Affirmed.

Frank L. Warren and White & Nichols. for plaintiffs in error.

Ledbetter, Stuart, Bell & Ledbetter, for defendants in error.

Opinion by THOMPSON, C. This appeal is prosecuted by J. S. Bearden and Frank L. Warren, plaintiffs in error, against the American National Bank of Oklahoma City, Okla., and the Tidal Oil Company, defendants in error, from a judgment of the district court of Hughes county, Okla., denying objections of plaintiffs in error to the confirmation of sale of lands at a mortgage foreclosure sale.

The action was originally commenced on the 3rd day of October, 1921, by the American National Bank on two promissory notes for the sum of $27,600 each, given to one J. M. Robberson on the 7th day of November, 1918, by Strain Brothers & Finks, a copartnership. To secure the payment of said notes the copartnership gave a mortgage upon about 3,000 acres of land in Hughes county, Okla. The notes were assigned before maturity to the American National Bank. On April 3, 1920, the copartnership entered into a contract with one W. J. Brown for the sale of 2,040 acres of the mortgaged land, Brown paying one-half of the purchase price to the copartnership and executing his note and mortgage to it for the balance of $29,580. Brown, on August 17, 1920, thereafter, gave his note and mortgage to one R. E. Snell for $16,172.60, being the third mortgage upon this land. On April 15, 1920, Brown and Strain Brothers & Finks, joined with one J. R. Autry, who was the owner of one-half of the oil and gas rights, executed an oil and gas lease on 160 acres of this land, located in section 3, township 9 north, range 11 east, which was afterwards assigned to the Tidal Osage Oil Company. The Tidal Osage Oil & Gas Company had, on April 25, 1915, secured an oil and gas lease on 100 acres in the same section, township, and range. The last-mentioned lease was executed and recorded prior to the date of the note and mortgage of the American National Bank, and the first mentioned lease was subsequent to the execution and delivery of the notes and mortgage sued on.

On the 3rd day of February, 1923, Frank L. Warren obtained from W. J. Brown an assignment of the gas, oil and mineral rights on 160 acres in section 2, and a one-half interest in the mineral rights in 20 acres in section 15, and 80 acres in section 23, all in township 9 north, range 11 east.

On the 15th day of October, 1924, at the date of the trial, the attorneys for the American National Bank, the attorneys for Strain Brothers & Finks, the attorneys for W. J. Brown, and the attorneys for R. E. Snell, Jr., entered into the following stipulation:

"It is hereby stipulated by and between the American National Bank of Oklahoma City, Strain Brothers & Finks, a copartnership composed of Henry L. Strain, Ben H. Strain, and P. M. Finks, and by R. E. Snell, Jr., and by W. J. Brown, and by their respective attorneys of record as follows:

"1. It is agreed that the plaintiff, the American National Bank, shall have judgment for the amount due on the two notes sued on in this action, and shall have further judgment for the foreclosure of the mortgage upon all of the land covered thereby. It is further stipulated that the American National Bank is not to take a deficiency judgment against Strain Brothers & Finks, or any of them; that Strain Brothers & Finks are not to take a deficiency judgment against W. J. Brown; that the defendant R. E. Snell, Jr., is not to take a deficiency judgment against W. J. Brown.

"2. It is further stipulated and agreed that the defendant W. J. Brown is to have 80 acres of land of the agreed value of $2,400, and the defendant R. E. Snell, Jr., is to have 80 acres of land of the agreed value of $2,000. It is further stipulated and agreed that, if at the foreclosure sale the plaintiff, the American National Bank, buys in the said land covered by its mortgage, that it will cause to be delivered to W. J. Brown a good and sufficient deed to the 80 acres, conveying all of the purchaser's interest in said land, but not warranting the title generally, which said 80 acres is described as follows, to wit: The southeast quarter of the northeast quarter, and the east half of the northwest quarter of the northeast quarter, and the west half of the northeast quarter of the northeast quarter, all in section 3, township 9 north, range 11 east in Hughes county, Okla., containing 80 acres; or if the bank, or someone for them, does not become the purchaser, then and in that event, to pay the said W. J. Brown the sum of $2,400.

"3. It is further stipulated and agreed that if at the foreclosure sale the plaintiff, the American National Bank, buys in the said land covered by its mortgage, that it will cause to be delivered to R. E. Snell, Jr., a good and sufficient deed to the 80 acres, conveying all of the purchaser's interest in said land, but not warranting the title generally, which said 80 acres is described as follows, to wit: The west half of the northwest quarter of the southeast quarter, and the northwest quarter of the southwest quar-

rer of the southeast quarter, and the northeast quarter of the southeast quarter of the southwest quarter, all in section 1, and the southwest quarter of the northwest quarter of the northeast quarter, and the southeast quarter of the northeast quarter of the northwest quarter, and the east half of the southeast quarter of the northwest quarter, all in section 12, all in township 9 north, range 11 east, Hughes county, Okla., containing 80 acres, more or less, or if the bank, or someone for them, does not become the purchaser, then and in that event to pay the said R. E. Snell, Jr., the sum of $2,000.

"4. It is further agreed that in the event that at the foreclosure sale the land brings a sum in excess of the costs of the action and the amount due the plaintiff, the American National Bank, then the excess, if any, shall be paid to the defendants, Strain Brothers & Finks.

"5. It is further stipulated and agreed that the sale of the property covered by the mortgage and the execution of the deeds herein provided shall fully and finally determine all matters with reference to the land herein described, and the sale of the property and the payment of the proceeds as herein provided for shall be full payment and satisfaction of all notes set forth and sued on in this action."

On the 15th day of May, 1925, after the date of the rendition of the judgment for the debt and foreclosure of the mortgage, there was an assignment claimed to have been made of whatever rights Henry L. Strain and Ben A. Strain, two members of the copartnership, had in said judgment to J. S. Bearden, one of the plaintiffs in error. The Tidal Osage Oil Company, one of the defendants in error, discovering that a judgment had been taken against it in the foreclosure proceedings, declaring the mortgage lien prior and superior to its oil and gas leases, and contending that it had not been properly served as a foreign corporation with legal process, threatened to set aside the default judgment rendered against it in said proceeding and stop the sale, and through negotiations with the defendant in error, the American National Bank of Oklahoma City, obligated itself not to drill in the well already commenced by it on its 1915 lease. After further negotiations, the said Tidal Osage Oil Company secured a release from the American National Bank of Oklahoma City by paying upon the judgment the sum of $10,000, which was credited on the judgment, and proceeded to drill on its 1915 lease.

An order of sale was issued by the clerk of the court, which exempted from the sale the leases owned by the Tidal Osage Oil Company in compliance with its agreement between it and the American National Bank of Oklahoma City and upon the payment of the $10,000, which was credited upon the order of sale and the judgment, the company was released. On the 23rd day of June, 1925, the plaintiffs in error secured a restraining order against the sale, which, after evidence taken and a trial had, was thereafter dissolved, and the mortgaged land sold and the plaintiffs in error, on the 7th day of July, 1925, filed their objections to the confirmation, on the grounds that the purchase price was grossly inadequate, and that the notice of sale unlawfully excluded from the sale a valuable part of the land, and that the American National Bank, the plaintiff, had attempted to release and did exclude from the sale property sufficient to satisfy the entire debt, and asked that the confirmation of the sale be denied, and that all other proceedings be required to be in accordance with the judgment and directions of the court. After evidence taken and a trial had, the court overruled the objection of plaintiffs in error to the confirmation and proceeded to confirm the sale. To the rendition of said judgment the plaintiffs in error reserved their exceptions and after an unsuccessful motion for new trial, the cause comes regularly to this court upon appeal from said judgment.

The attorneys for plaintiffs in error, in their brief, complain of the action of the court in dissolving the temporary restraining order and denying their plea that the American National Bank be compelled to credit their judgment with the value of the leasehold estate, and complained of the action of the court in confirming the sale of the mortgaged land in the way said sale was confirmed. That the attempt to satisfy and exclude from the operation of the judgment the leasehold estates leased to the Tidal Osage Oil Company was an act of waste for which the American National Bank is chargeable on an accounting; that the leasehold estate so released was of the value of from $60,000 to $90,000; that, if the same had been sold in accordance with the stipulation and judgment of the court, and the proceeds therefrom applied to the satisfaction of the judgment, there should have been a balance due to J. S. Bearden; that the order of sale is a special execution, and that the same must, in all respects, conform to the judgment of the court, and that the sale in this case was not in conformity with said judgment, and that the American National Bank as the purchaser at said sale should not be permitted to absorb the remainder in satisfaction of its judgment thereby eliminating

the equity of the plaintiff in error, J. S. Bearden, secured by his purchase from Strain Brothers & Finks of his equity of redemption, and that the American National Bank be required to credit the judgment with the value of the leases, ranging from $60,000, and to permit J. S. Bearden to pay off the remainder of the judgment and save the lands from sale.

Attorneys for defendant in error, in their brief, contend:

"(1) The plaintiff in error, Frank L. Warren, has no interest in this controversy, he being a purchaser pendente lite, and the plaintiff, mortgagee, having no notice of his interest in the land.

"(2) In the equity causes, if there is competent evidence to support the judgment of the court. the cause will not be reversed unless the judgment of the trial court is clearly against the weight of the evidence.

"(3) The defendants, Strain Brothers & Finks, had waived their right to redeem the land, and Henry Bearden, in attempting to purchase their equity of redemption, acquired no greater right than they had.

"(4) The equity of redemption having been waived, the plaintiff owes no duty to the defendants, Strain Brothers & Finks, to speculate as to the oil and gas value of this land.

"(5) Defendants, Strain Brothers & Finks, having waived their right to bonus money by their deed to Brown, and by executing the lease to Tidal Osage Oil Company, are not entitled to claim the benefits of any bonus that the leases would have brought upon resale

"(6) In the absence of fraud, the only questions that can be raised in objection to the confirmation of a judicial sale are as to the regu'arity of the officers' proceedings."

The judgment of the court dissolving the temporary restraining order, or injunction, was not appealed from within 30 days after it was rendered by the fi'ing of a petition in error in the Supreme Court by the plaintiffs in error, as provided in section 809, Comp. Stat. 1921.

W. J. Brown, the grantor in the deed to the mineral rights to Frank L. Warren, was one of the parties defendant in the original action, and when the plaintiff in error, Frank L. Warren, obtained his deed to said mineral rights the action was pending between the defendant in error and W. J. Brown, his grantor.

Under section 260, Comp. Stat. 1921, it is provided:

"When the petition has been filed. the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons, in the subject-matter thereof as against the plaintiff's title; but such notice shall be of no avail unless the summons be served or the first publication made within 60 days after the filing of the petition."

It does not appear that any actual notice of such transaction was ever brought to the attention of the defendant in error, although the mineral deed was recorded before the final decree was entered. This recording of the deed does not have the effect to operate as a notice to the mortgagee, and the defendant in error, the mortgagee, was not charged with any duty to protect Frank L. Warren in the action then pending, and the rights of W. J. Brown, his grantor, who was a defendant in the action then pending, were disposed of in the second paragraph of the stipulation, heretofore set forth in this opinion. in which it was provided that he was to receive 80 acres therein described. which included a portion · of the leased premises, or, in the a'ternative, $2,400 in cash, and R. E. Snell, to whom Brown owed a debt in the amount heretofore set forth, and to whom Brown had given a mortgage on a portion of the lands herein involved, was to receive 80 acres described in the third paragraph of the stipulation, or, in the alternative, $2,000 in cash, and, in the first paragraph of the petition. Brown received a further consideration for his interests in the land in that he was released by Strain Brothers & Finks from any further payment to them of the balance of the purchase price of the land, and that Strain Brothers & Finks would not take a deficiency judgment against him. In this situation, as disclosed by the record, we are of the opinion that the plaintiff in error Frank L. Warren as a purchaser pendente lite can have no interest in the relief sought in this action, as he and his grantor, W. J. Brown, under the stipulation, could have no further interest in the land. or in this action, other than that Brown was entitled to have the 80 acres, described in paragraph 2 of the stipulation, deeded to him by the American National Bank, one of the defendants in error, when it became the purchaser of the land, and, in our view of the case, this concludes both Brown and his grantor, Frank L. Warren, from any further claim or interest in this action, for, by the very terms of the stipulation. neither he nor his grantor has any equity of redemption, and therefore no interest in this appeal.

We next pass to the question of the rights of J. S. Bearden, one of the plaintiffs in error in this action. We find from the record that the partnership of Strain Brothers &

Finks was composed of Henry L. Strain, Ben A. Strain, and P. M. Finks, each of whom owned an undivided one-third inter- est in the property of the partnership, and only a one-half interest in the oil and gas rights, and while the plaintiff in error J. S. Bearden claimed to have had assigned to him whatever interests the partnership had in the judgment, yet, upon an examination of the record, we find that P. M. Finks never, at any time, assigned any interest that he might have had, and never authorized any- one else to assign it for him, and no con- sideration was paid by Bearden therefor. We also find that Ben A. Strain joins with P. M. Finks in the motion of defendant in error for the confirmation of the sale, and in said motion they say that they consider the sale fair and, reasonable, and that on the day judgment was rendered in this case all of the defendants, composed of the firm of Strain Brothers and P. M. Finks, personally and specifically authorized and directed the de- fendant in error, American National Bank, to sell or dispose of all, or any part, of the property at private sale, if a purchaser could be secured that was satisfactory to the de- fendant in error, and deny that they ever sold their interest to Bearden, and, there- fore. Bearden at best acquired only a one- sixth interest in the judgment rights of Strain Brothers in the oil and gas rights. In the first paragraph of the stipulation, heretofore copied in this opinion, it was agreed between this copartnership and the American National Bank, that it would not take a deficiency judgment against the Strain Brothers & Finks, or any of them, and it is provided, in paragraph 5 of the stipulation, that the sale of the property should finally determine all matters, and that the money received should be in full payment and sat- isfaction of all the indebtedness set forth and sued on in this action, and, in the oral testimony introduced at the trial, it is un- contradicted that all the parties agreed that either of the parties to the action should procure purchasers and sale of the property to the best advantage of all concerned. It cannot be said that the copartnership or the plaintiff in error, J. S. Bearden. had any claims to the speculative value of the oil rights held under the lease by the Tidal Osage Oil & Gas Company, for the Tidal Osage Oil & Gas Company already had an oil and gas mineral lease on the land, execu- ted in 1915, not subject to the mortgage or the rights of plaintiffs in error, and also one executed by the copartnership and Brown and Autry in 1920, and, at that time, Brown had purchased, or contracted to purchase,

the land upon which these leases existed, and was the owner of the royalty interest. and we therefore cannot see how Bearden, by his purchase of the interests of the copart- nership in the judgment, could be benefited, in any way, as to the oil and gas rights in the lands covered by these leases as his as- signors had parted with this interest to Brown and the Tidal Osage Oil & Gas Company. At the time of the release of the Tidal Osage Oil & Gas Company by the judgment creditor, the American National Bank, this land only had a speculative val- ue for oil and gas, and we cannot say that, under the conflicting evidence as to value introduced in regard to the release of the oil and gas leases, the $10,000 consideration credited against the judgment was not a fair consideration. However, we understand the law to be that where a mortgagee re- leases a part of two parcels of land, which is charged with the incumbrances, if by such release he incurs any liability, it would only be "such a proportion of the sum due on the mortgage as the value of the parcel re- leased bore, at the time of the execution of the mortgage, to the value of both par- cels." Jones on Mortgages (7th Ed.) sec. 722. There is no evidence in the record as to the value of these leases on November 7, 1918, the date of the execution of the mort- gage. We also understand the law to be that a mortgagee may make a partial re- lease without any consideration. without im- pairing his right to enforce his mortgage against the remainder of the property, un- less he had actual notice of the previous transfer of the remainder, or some portion of it, by the mortgagor. See Jones on Mort- gages (7th Ed.) sec. 1631. The same au- thor says, at section 982, that it is universal- ly held that the mere recording of a subse- quent conveyance or incumbrance is not no- tice to the prior mortgagee. He is affected only by actual notice. There is no proof of any actual notice by the plaintiffs in error of the interest acquired by them. See Jones on Mortgages, section 722 (7th Ed.)

There is no attempt made to show. nor could there be any fraud charged against the defendant in error, the American Nation- al Bank. in this case. The property was sold by the sheriff to said defendant in er- ror for $58,496.64. It had already received $10,000 through the Tidal Osage Oil & Gas Company. The defendants, who were inter- ested in the lands, had all been released in the stipulation from any claim of a deficiency judgment against them, and relieved of any liability under the warranty of title to the

leases to the Tidal Osage Oil & Gas Company, and by the stipulation the entire indebtedness due in the whole transaction was settled, satisfied, and canceled, and, under the whole evidence in this case, we are clearly of the opinion that the plaintiffs in error have no just cause of complaint, standing in relation to this case, as they do, and following the rule established by this court in numerous opinions, we cannot say that the judgment in this case is clearly against the weight of the evidence, but, on the other hand, we are of the opinion that it is fully sustained by the evidence, and that all the equities in this case are on the side of the defendants in error, and that the judgment of the trial court, in confirming the sale in this cause, should be upheld. Let the judgment be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. pp. 898, 900, §2869; 2 R. C. L. p. 204; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91. (2) 38 C. J. p. 29, §42: p. 55, §93; p. 56, §94. (3) 38 C. J. p. 57, §94 (Anno). (4) 27 .Cyc. p. 1698 (Anno).